## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

MICHELLE BREWER BROWN, et al.,

        Plaintiffs,

v.                                CIVIL ACTION NO.  2:07-cv-00550

BEVERLY ENTERPRISES - WEST VIRGINIA, INC., et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court are the defendants' Motion for Summary Judgment [Docket 56] and the defendants' Motion for Summary Judgment as to Damages [Docket 58].  For the reasons that follow, the court **FINDS** that no genuine issue of material fact remains and **GRANTS** the defendants' Motion for Summary Judgment.  Consequently, the court **DENIES** as moot the defendants' Motion for Summary Judgment as to Damages.  Finally, the court **ORDERS** judgment to be entered in favor of the defendants.

**I. Background**

The claims in this case arise from the defendants' termination of Plaintiff Michelle Brewer Brown from employment on or about August 31, 2006.  The defendant Beverly Enterprises - West Virginia, Inc. d/b/a Golden Living Center ("Beverly") operates a skilled nursing facility in Glasgow, West Virginia.[1]  (Defs.' Mem. Supp. Mot. Summ. J. 2 [Docket 57].)  Ms. Brown began working for

---

[1]     In their Complaint, the plaintiffs assert that Defendant Golden Gate National Senior Care, LLC, ("Golden Gate")  owned and/or operated Beverly Enterprises during the relevant time
(continued...)

Beverly as a certified nursing assistant ("CNA") on June 29, 1998.  (*Id.*)  On August 25, 2004, Ms. Brown suffered a work-related injury to her wrist.  This injury was deemed compensable by the West Virginia Worker's Compensation Commission.  (Pls.' Mem. Supp. Pls.' Obj. & Resp. 3 [Docket 62].)  Ms. Brown consequently received workers' compensation benefits and took leave from work until September 2004 when she returned for light duty.  (*Id.*; Defs.' Mot. Summ. J. Ex. A, Tr. Michelle Brown Depo. at 35 [Docket 56].)  At the end of that month further injury to her wrist required Ms. Brown to take leave until July 2005.  (*Id.*)  After one week of work in July 2005, the plaintiff re-injured her wrist and again took injury leave.  (*Id.*)  Ms. Brown alleges that Beverly did not notify her at any time during her several periods of workers' compensation leave that the leave provided to her under provisions of the Family Medical Leave Act ("FMLA"),  Pub. L. 103-3, 107 Stat. 6 (codified in scattered sections of 29 U.S.C. and 5 U.S.C.), was running concurrently.  (Am. Compl. ¶ 13; Pls.' Mem. Supp. Pls.' Obj. & Resp. 4.)

On August 3, 2006, while Ms. Brown was still on disability leave, she visited her treating physician, Dr. Luis Bolano.  (Defs.' Mot. Summ. J., Ex. A, Tr. Michelle Brown Depo., Ex. 6, 11.)  At that time, Dr. Bolano told Ms. Brown that "she would be unable to return to work until at least September 29, 2006."  (Defs.' Reply Mem. Ex. A, Tr. Michelle Brown Depo. at 78 [Docket 66].)  Some time after that appointment, Ms. Brown received a letter from Beverly, dated July 27, 2006, informing her that her temporary total disability benefits would "reach the maximum allowed by law in ninety days or less."  (Defs.' Mot. Summ. J. Ex. A, Tr. Michelle Brown Depo., Ex. 6.)  Upon receiving that letter, Ms. Brown contacted Dr. Bolano's office and asked if she could return to work

---

[1](...continued)
period and is therefore jointly and severally liable with Defendant Beverly.  (Am. Compl. ¶ 3 [Docket 27].)

on a trial basis.  (Defs.' Reply Mem. Ex. A, Tr. Michelle Brown Depo. at 78.)  Dr. Bolano told her

she could try working on a short term basis and wrote a note releasing Ms. Brown to "return to work

with light duty restrictions, no lifting more than 40 lbs. on 09/01/06."  (*Id.*; Defs.' Mot. Summ. J.

Ex. A, Tr. Michelle Brown Depo., Ex. 11.)  Dr. Bolano also restarted Ms. Brown on physical

therapy at that time.  (Defs.' Mot. Summ. J. Ex. A, Tr. Michelle Brown Depo., Ex. 9, IME Report

at 7.)

On August 8, 2006, Dr. Saghir Mir, upon request by a workers' compensation administrator,

conducted an independent medical examination of Ms. Brown.  He estimated that Ms. Brown could

remain temporarily totally disabled for another two to three months.  (*Id.* at 14.)  He further reported

that "based on her previous history and now complaints . . . her long-term prognosis seems poor."

(*Id.*)

Ms. Brown alleges that she told Jean Lavender, Director of Nursing for Beverly, that she

anticipated being able to return to work on September 1, 2006 and being able to work without

restrictions after her doctor's appointment scheduled for September 28, 2006.  (Pls.' Mem. Supp.

Pls.' Obj. & Resp. 3-4.)  Ms. Brown further alleges that Ms. Lavender told her that Ms. Brown

would have to undergo a functional capacity evaluation after which she would be permitted to return

to her former work schedule.  (*Id.* at 4.)

On August 30, 2006, various Beverly administrators, including Ms. Lavender, met to discuss

the physical recovery of their injured employees.  According to Ms. Lavender, the administrators

considered Dr. Bolano's and Dr. Mir's notes and reports and determined that Ms. Brown "would not

be able to perform the essential functions of the [CNA] position, that no available positions were

available at the light physical demand level, and also that a modified work duty program was not

recommended based upon [Ms. Brown's] prognosis of August 8, 2006." (Defs.' Mot. Summ. J. Ex. D, Lavender Aff. ¶ 4.)  The administrators further determined that Ms. Brown had exhausted her workers' compensation temporary total disability benefits as well as her FMLA entitlement and that on September 1, 2006, Ms. Brown would no longer be entitled to further leave from work.  (*Id.* ¶ 5.)  Beverly subsequently sent a letter to Ms. Brown, dated September 1, 2006, informing her that she would be removed from payroll effective August 31, 2006.  (Defs.' Mot. Summ. J. Ex. B, Collective Bargaining Agreement - BEWV/BRN - 180(b).)  Ms. Brown was referred to vocational rehabilitation on September 13, 2006.

After her termination, Ms. Brown began looking for new employment.  She applied to work for Beverly through an online application form.  (Pls.' Mem. Supp. Pls.' Obj. & Resp. 5.)  Though she also attempted to obtain a hard copy application, she was not permitted to enter the Beverly facility where she could do so.  (*Id.*)  Ms. Brown also wrote a letter to Ms. Lavender, and Lora Linger requesting that she be placed back on her old schedule.  (*Id.*, Ex. H.)  Sometime later, Ms. Brown informed Beverly that she had secured other employment.[2]  (Defs.' Mem. Supp. Summ. J. 6; Pls.' Mem. Supp. Pls.' Obj. & Resp., Ex. O-3.)

Mr. Steven Brown, who was Ms. Brown's husband during the relevant time period and is also a plaintiff in this case (Am. Compl. ¶ 1.), alleges that Ms. Brown became a "whole different person" after she was terminated by Beverly.  (Pls.' Mem. Supp. Pls.' Obj. & Resp., Ex. L, Tr. Steven Brown Depo. at 31.)  He asserts that after Ms. Brown was terminated, she became aggressive and argumentative.  (*Id.*)  Mr. Brown also asserts that he and Ms. Brown separated several times due

---

[2]     Neither party has provided a date for this event.  Though Ms. Brown has submitted as an exhibit a letter that she sent to Beverly informing them of her new employment, Pls.' Mem. Supp. Pls.' Obj. & Resp., Ex. O-3, the letter is not dated.

to disagreements about financial issues.[3]  (*Id.* at 39.)  According to Mr. Brown, he became the primary bearer of the couple's financial responsibilities after Ms. Brown's termination.  (*Id.* at 45-46.)  Finally, Mr. Brown asserts that he and Ms. Brown had reduced sexual relations after her termination.  (*Id.* at 52.)

Based on these events, the plaintiffs brought a civil action in the Circuit Court of Kanawha County, West Virginia on August 8, 2007.  (Notice of Removal, Ex. 1 [Docket 1].)  On September 6, 2007, the defendants removed the action to this court based on this court's federal question and diversity jurisdiction. 28 U.S.C. § 1441(a), 1331, 1332.  The plaintiffs filed an Amended Complaint in this court on January 3, 2008 [Docket 27].  In that Complaint, the plaintiffs alleged that: 1) Beverly violated the Family Medical Leave Act ("FMLA"); 2) Beverly had committed workers' compensation discrimination against Ms. Brown; 3) Beverly had denied Ms. Brown accrued wages under the West Virginia Wage Payment and Collection Act ("WPCA"), W. Va. Code § 21-5-1to -5-18; and 4) Mr. Brown had suffered a loss of consortium as a result of Beverly's wrongful termination of Ms. Brown.

On September 4, 2008, the defendants filed a Motion for Summary Judgment [Docket 56] and a Motion for Summary Judgement as to Damages [Docket 58].  Those motions are now pending and ripe before this court.

**II. Discussion**

In their Motion for Summary Judgment, the defendants argue that 1) Ms. Brown "has failed to establish that she was entitled to any leave under the FMLA" and has not shown that she suffered

---

[3]     They were separated for at least six months before August 31, 2006.  (Pls.' Mem. Supp. Pls.' Obj. & Resp. Ex. L., Tr. Steven Brown Depo. at 38.)

prejudice from the defendants' alleged violation of the FMLA; 2) Ms. Brown cannot establish a prima facie case of workers' compensation discrimination; 3) Ms. Brown "has failed to establish a claim for unpaid fringe benefits under the [WPCA]"; and, 4) Mr. Brown cannot establish that his loss of consortium occurred as a result of Ms. Brown's termination.  I will address each of these arguments in turn, but first I will briefly discuss the applicable standard of review for a summary judgment motion.

### A. Summary Judgment Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor."  *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position.  *Anderson*, 477 U.S. at 252.

**B. FMLA Claim**

In its Motion for Summary Judgment, Beverly challenges Ms. Brown's FMLA claim. Ms. Brown alleges that she was never on FMLA leave and that Beverly never advised her that her time on medical leave would be considered FMLA leave. (Am. Compl. ¶ 13.) Consequently, she argues, she was entitled to FMLA leave at the time of her termination and was thus wrongfully terminated. (Pls.' Mem. Supp. Pls.' Obj. & Resp. 14.) She further argues that Beverly's failure to notify her that her FMLA leave ran concurrently with her workers' compensation leave interfered with her FMLA right to medical leave. (*Id.* at 16.) According to Ms. Brown, the failure to notify constitutes a "direct violation to the FMLA . . . ." (*Id.* at 14 )

The defendants argue that Ms. Brown cannot establish a claim under the FMLA because: 1) she was notified that her FMLA and worker's compensation leaves ran concurrently; 2) even if she was not notified, she was not prejudiced by her lack of notification because she was physically incapable of working during the time she was on leave; and 3) she was not qualified for FMLA leave because she did not work the requisite 1250 hours during the twelve-month period prior to her termination, the time that she says her leave should have started. (Defs.' Mem. Supp. Defs.' Mot. Summ. J. 8-10.)

**1. FMLA**

Under FMLA, an eligible employee is "entitled to a total of 12 workweeks of leave during any 12-month period" for certain family and health related exigencies. 29 U.S.C. § 2612(a)(1). An eligible employee is one that has been employed by the employer from whom leave is requested for at least twelve months, and has worked at least 1250 hours for that employer during the previous twelve month period. *Id.* § 2611(2)(A). FMLA forbids an employer from interfering with,

restraining, or denying the exercise of any rights provided by FMLA, including an eligible employee's right to health related leave. 29 U.S.C. § 2615(a)(1). If an employer does interfere with, restrain, or deny such rights, then the deprived employee may bring a cause of action under § 2617. 29 U.S.C. § 2617(a)(1). To succeed in a § 2617 cause of action, an employee must show that 1) "the employer violated § 1215 by interfering with, restraining, or denying his or her exercise of FMLA rights," and 2) that "the employee has been prejudiced by the violation." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002); *see also Miller v. Personal-Touch of Virginia, Inc.*, 342 F. Supp. 2d 499, 513 (E.D. Va. 2004) (requiring the plaintiff bringing an FMLA action to show that she was prejudiced by the employer's actions).

### 2. Summary Judgment Against Ms. Brown's FMLA Claim Is Appropriate

Regardless of whether Beverly notified Ms. Brown that her FMLA leave ran concurrently, Ms. Brown cannot succeed on her FMLA claim because she was not entitled to FMLA leave at the time that she was terminated. To be eligible for twelve weeks of FMLA leave, an employee must have worked 1250 hours during the twelve months previous to the time of the request. 29 U.S.C. § 2611(2)(A). Ms. Brown, however, did not work at all during the twelve months previous to her termination, the time at which she claims she was entitled to FMLA leave. According to Ms. Brown, she was able to work for one week in July 2005, but afterwards was forced to take off work until September 1, 2006. (Pls.' Mem. Supp. Obj. & Resp., Ex. A, Michelle Brown Aff. ¶ 5; Defs.' Mot. Summ. J., Ex. A. Tr. Michelle Brown Depo. at 36.) Therefore, on August 31, 2006, the day that she was terminated, she had not worked the requisite number of hours to be entitled to FMLA leave. Moreover, to the extent that Ms. Brown was entitled to twelve weeks of FMLA leave when she first took medical leave in August 2004, she used up that leave during the two years that she

-8-

could not work and it was not available to her at the time she was terminated.  *Cf. Moticka v. Weck Closure Systems*, 183 Fed. Appx. 343, 349 (4th Cir. 2006) ("[The plaintiff's] rights were not infringed, because she was allowed to stay out of work for thirty-four weeks . . . far more than the twelve weeks of leave required under the FMLA.").  Accordingly, Ms. Brown was not entitled to any FMLA leave at the time she was terminated and her termination did not deprive her of any such leave.  Because Ms. Brown has failed to raise any genuine issues of material fact as to whether she was entitled to FMLA leave, I **FIND** that summary judgment in favor of the defendants is appropriate for this claim.

### C. Workers' Compensation Discrimination Claim

Ms. Brown alleged in her Complaint that Beverly discriminated against her because Beverly terminated her for filing a workers' compensation claim and receiving workers' compensation benefits.  (Am. Compl. ¶ 15.)  She argues that this conduct violates West Virginia Code § 23-5A-3.  (*Id.*)  Beverly argues that summary judgment is warranted for Ms. Brown's workers' compensation discrimination claim because she has not presented a prima facie case of discrimination.  (Defs.' Mot. Summ. J. ¶ 2.)  Ms. Brown has responded that based on Beverly's conduct, she can make a prima facie case of workers' compensation discrimination and also show that Beverly's alleged justification for her termination is merely pretext.  (Pls.' Mem. Supp. Pls.' Obj. & Resp.  9-14.)

### 1. West Virginia Workers' Compensation Discrimination Law

"No employer shall discriminate in any manner against any of his present or former employees because of such present or former employee's receipt of or attempt to receive [workers' compensation benefits]."  W. Va. Code § 23-5A-1.  **"**In order to make a prima facie case of [workers' compensation] discrimination under West Virginia Code § 23-5A-1, an employee must

-9-

prove that: (1) an on-the-job injury was sustained; (2) proceedings were instituted under the Workers' Compensation Act . . . and (3) the filing of a workers' compensation claim was a significant factor in the employer's decision to discharge or otherwise discriminate against the employee." Syl. Pt. 1, *Powell v. Wyoming Cablevision, Inc.*, 403 S.E.2d 717, 718 (W. Va. 1991). To determine whether the filing of a workers' compensation claim was a significant factor in the employer's decision to discharge the employee, a court will look at factors such as the "proximity in time of the claim and the firing," "evidence of satisfactory work performance" before the injury creating a need for workers' compensation occurred, and "evidence of an actual pattern of harassing conduct." *Id.* at 721.

If an employer terminates an employee because of an apparent inability to resume the duties of her former position or because of a "lengthy injury-related absence," and the employer does not have a written absenteeism policy, then the court will consider additional factors. *Id.* at 722-23. These factors include "the severity of the injury as it relates to the employee's ability to perform h[er] accustomed work" and "what is a reasonable recovery period viewed . . . with the prospect of when the employee will be able to perform h[er] accustomed work." *Id.* at 723. "When an employee makes a prima facie case of discrimination, the burden then shifts to the employer to prove a legitimate, nonpretextual, nonretalitaory reason for the discharge. . . . In rebuttal, the employee can offer evidence that the employer's proffered reason for the discharge is merely a pretext for the discriminatory act." *Id.* at 722.

In addition to the general prohibition against workers' compensation discrimination, the West Virginia Code also sets out specific employer practices that constitute workers' compensation discrimination in violation of § 23-5A-1. West Virginia Code § 23-5A-3(a) states that:

> It shall be a discriminatory practice to terminate an injured employee while the injured employee is off work due to a compensable injury . . . and is receiving or is eligible to receive temporary total disability benefits, unless the injured employee has committed a separate dischargeable offense.

W. Va. Code § 23-5A-3(a).  Section 23-5A-3(b) states that:

> It shall be a discriminatory practice within the meaning of section one of this article for an employer to fail to reinstate an employee who has sustained a compensable injury to the employee's former position of employment upon demand for such reinstatement provided that the position is available and the employee is not disabled from performing the duties of such position. If the former position is not available, the employee shall be reinstated to another comparable position which is available and which the employee is capable of performing. . . . In the event that neither the former position nor a comparable position is available, the employee shall have a right to preferential recall to any job which the injured employee is capable of performing which becomes open after the injured employee notifies the employer that he or she desired reinstatement.

W. Va. Code § 23-5A-(3)(b).

### 2. Summary Judgment Against Ms. Brown's Workers' Compensation Discrimination Claim Is Appropriate

In evaluating Ms. Brown's workers' compensation discrimination claim in the context of a summary judgment motion, I draw guidance from the standards applied by courts in other employment discrimination cases.  The Fourth Circuit has explained that courts must take "special care" when considering summary judgment in an employment discrimination case because "motive often is the critical issue."  *Ballinger v. N.C. Agr. Extension Serv.*, 815 F.2d 1001, 1005 (4th Cir. 1987).   "Where state of mind is a decisive element of a claim or defense, summary judgment is seldom appropriate inasmuch as state of mind generally is dependent on the resolution of conflicting inferences drawn from circumstantial or self-serving evidence, or on the credibility of witnesses."  *Thacker v. Peak*, 800 F. Supp. 372, 376 (S.D. W. Va. 1992) (internal citations omitted).  Thus, a plaintiff may defeat an employer's motion for summary judgment in an employment discrimination

case if she demonstrates a genuine issue of material fact as to whether the employer's alleged motives for termination are merely pretext. *See Mitchell v. Data General Corp.*, 12 F.3d 1310, 1317 (4th Cir. 1993).

The need for heightened caution, however, does not prohibit a court from resolving a case through summary judgment. *Id.* For instance, a plaintiff may not succeed on a motion for summary judgment if the "claim rests solely on unsupported allegations of motive." *Thacker*, 800 F. Supp. at 376. A court may also consider "the probative value of the proof that the employer's explanation is false." *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 215 (4th Cir. 2007) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000)); *see Hux v. City of Newport News, Va.*, 451 F.3d 311, 315 (4th Cir. 2006) ("[T]he plaintiff cannot seek to expose that rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it. The former would not create a 'genuine' dispute, the latter would fail to be 'material.'") (internal citations omitted). Because I find that Ms. Brown's allegations of Beverly's discriminatory motive are unsupported, I **FIND** that there are no genuine issues of material fact for this claim.

### a. Ms. Brown Has Not Raised A Genuine Issue Of Material Fact As To Whether Beverly Violated West Virginia Code § 23-5A-3

Ms. Brown has provided no evidence showing that Beverly violated West Virginia Code § 23-5A-3. First, Beverly did not violate § 23-5A-3(a) because Ms. Brown was not receiving or eligible to receive temporary total disability benefits at the time that she was terminated. *See Rollins v. Mason County Bd. of Educ.*, 489 S.E.2d 768, 773 (W. Va. 1997). Ms. Brown does not dispute that her temporary total disability benefits had expired at the time she was terminated. (Defs.' Mot.

Summ. J. Ex. A, Tr. Michelle Brown Depo., Ex. 8 at 3.)  Thus, there is no genuine issue of material

fact regarding Beverly's violation of this statute.

Second, Beverly did not violate § 23-5A-3(b) because Ms. Brown was disabled from

performing the duties of a CNA at the time she was terminated.   In order to exercise the

reinstatement rights protected by this statute, including rights to preferential recall, an employee

must prove "through competent medical evidence that [s]he has recovered from h[er] compensable

injuries and is capable of returning to work and performing h[er] job duties."  *Bailey v. Mayflower*

*Vehicles Sys., Inc.*, 624 S.E.2d 710, 715 (W. Va. 2005).   At the time that Beverly decided to

terminate Ms. Brown, Ms. Brown was not able to perform the duties of a CNA based on information

from Dr. Bolano and Dr. Mir.  In his note, Dr. Bolano released Ms. Brown only to "return to work

with light duty restrictions, no lifting more than 40 lbs. . . . ." (Pls.' Mem. Supp. Pls.' Obj. & Resp.,

Ex. B.) Dr. Mir concluded that Ms. Brown had not fully recovered and reported that "she continues

to be temporarily totally disabled." (Defs.' Mot. Summ. J. Ex. A, Tr. Michelle Brown Depo., Ex.

10 at 14.)   He further estimated that the remaining "period of disability could be another 2-3

months."  (*Id.*)  Finally, he reported that "based on her previous history and now complaints, her

return to work prognosis is somewhat guarded.   It would be a good idea for her to resume her

vocational counseling.  Again, her long term prognosis seems poor." (*Id.*)

Though Ms. Brown alleges in her complaint that she was "able to return to work and perform

the duties of her job as a certified nursing assistant as of August 31, 2006," (Am. Compl. ¶ 14), she

provides no evidence to support this contention.  Instead, she concedes that on September 1, 2006,

she could only work on "light duty."  (Pls.' Mem. Supp. Pls.' Obj. & Resp., Ex. A, Michelle Brown

Aff. ¶ 6, 17.)  Because Ms. Brown has submitted no evidence that she was able to perform the duties

of her former position as a CNA at the time her workers' compensation benefits expired, she has not raised a genuine issue of material fact as to whether Beverly violated her reinstatement rights under West Virginia Code § 23-5A-3(b).

### b. Ms. Brown Cannot Establish A Prima Facie Case Of Workers' Compensation Discrimination

Beverly also argues that Ms. Brown cannot establish a prima facie case of workers' compensation discrimination. Specifically, Beverly argues that Ms. Brown cannot show that her filing a workers' compensation claim was a significant factor in its decision to discharge her.[4] (Defs.' Mem. Supp. Defs.' Mot. Summ. J. 11.) Ms. Brown responds that she has made a prima facie case of workers compensation discrimination because it is undisputed that she had a good employment record and also because the actions of various Beverly employees indicated available open employment positions. (Pls.' Mem. Supp. Pls.' Obj. & Resp. 11.) These facts, Ms. Brown argues, create a genuine issue of material fact regarding whether her workers' compensation claim was a significant factor in her termination. I disagree.

Ms. Brown has not made a prima facie case of discrimination because she has not provided sufficient evidence that her filing a workers' compensation claim was a significant factor in Beverly's decision to terminate her. *See Powell*, 403 S.E.2d at 721. Most telling is the long period of time between Ms. Brown filing her workers' compensation claim and her termination. *Cf. Bailey*, 624 S.E.2d at 714 (W. Va. 2005) (finding that employee could not make a prima facie case of workers' compensation discrimination because his "termination was remote in time not only to the

---

[4]     All parties agree that the first two elements of a prima facie case—the occurrence of an on-the-job injury and the institution of workers' compensation proceedings— have been satisfied. (Defs.' Mem. Supp. Defs.' Mot. Summ. J. 11; Pls.' Mem. Supp. Pls.' Obj. & Resp. 11.)

-14-

time of the filing of the workers' compensation claim, but also to his last receipt of workers' compensation benefits.")  Ms. Brown first filed a workers' compensation claim and was granted workers' compensation benefits after her injury in August 2004, two years before she was terminated.  *Cf. St. Peter v. Ampak-Division of Gatewood Products, Inc.*, 484 S.E.2d 481, 483 (W. Va. 1997) (holding that the plaintiff had established a prima facie case of discrimination in part because of the proximity in time (five days) between his filing a workers' compensation claim and his discharge).  Furthermore, Ms. Brown has failed to demonstrate a "pattern of harassing conduct" in response to her filing a workers' compensation claim.  *See Powell*, 403 S.E.2d at 722; *cf. Bailey*, 624 S.E.2d at 714 (finding that employee could not make a prima facie case of workers' compensation discrimination in part because the employee produced "no evidence of a pattern of harassing conduct for [the employee's] filing of a workers' compensation claim.") On the contrary, the evidence shows that Ms. Brown filed two workers' compensation claims for different injuries earlier during her employment at Beverly without suffering any negative consequences.  (Defs.' Mot. Summ. J., Ex. A, Tr. Michelle Brown Depo. at 33.)  Absent a proximity in time between Ms. Brown filing her claim and being terminated, and any evidence of a pattern of harassing conduct, Ms. Brown's evidence cannot establish a prima facie case of workers' compensation discrimination.

### c. Ms. Brown Has Failed To Raise A Genuine Issue Of Material Fact Regarding Beverly's Termination Justification

Even if Ms. Brown were able to make a prima facie case of employment discrimination, she cannot show that Beverly's proffered justification for her termination is merely pretext.  Beverly explained to Ms. Brown that "as a result of [her] exhausting FMLA and there not being a position [at Beverly] for [her]," she would be removed from the Beverly payroll.  (Pls.' Mem. Supp. Resp. & Opp'n Defs.' Mot. Summ. J. Ex. D.)  Ms. Brown argues that this explanation is pretext for her

-15-

discriminatory termination because she had not exhausted all of her leave and because positions were available at Beverly.

First, Ms. Brown argues that she had not exhausted all her leave. (Pls.' Mem. Supp. Pls.' Obj. & Resp. 12.) Because Ms. Brown does not offer any further explanation in this portion of her brief as to why she has not exhausted all of her leave, I assume she is referencing her FMLA claim. As I have already discussed, however, Ms. Brown's contention that she was entitled to FMLA leave at the time of her termination is without merit. Also, Ms. Brown does not dispute that she had exhausted her temporary total disability leave. Therefore, Ms. Brown's assertion that she had not exhausted her leave is unfounded and cannot support a showing of pretext.

Second, Ms. Brown asserts that Beverly did have positions open. To support this contention, Ms. Brown argues that Beverly's modified duty policy "clearly contemplates that modified or restricted work duties for certified nursing assistants are available. Consequently, any argument by Beverly that no position was available for Brown is pretextual and without a basis." (Pls.' Mem. Supp. Pls.' Obj. & Resp. 12.) Ms. Brown further argues that Beverly violated its modified duty policy because Beverly did not "set an appointment with the treating physician and inform the physician, or the physician's staff, that modified duty is available[,]" and also failed to "inquire of Brown, or her treating physician, the extent and length of her lifting restriction." (*Id.*) (emphasis omitted) Ms. Brown also asserts that Beverly advertised for open CNA positions both before and after she was discharged. (*Id.* at 13.) I will address each of Ms. Beverly's arguments in turn.

### i. Modified Duty Policy

Some courts have held that a terminated employee can show that an employer's proffered reason for termination is pretext "with evidence that the defendant acted contrary to a written

company policy prescribing the action to be taken by the defendant under the circumstances . . . ."
*Green v. New Mexico*, 420 F.3d 1189, 1193 (10th Cir. 2005) (quoting *Kendrick v. Penske Transp. Servs., Inc.,* 220 F.3d 1220, 1230 (10th Cir. 2000).  But simply alleging a policy violation without further evidence that the employee was treated differently does not establish pretext.  *See Sidique v. Univ. of Pittsburg Dep't of Dermatology*, No. 02-365, 2003 WL 22290334, at *7 (W.D. Pa. 2003).  Also, some violations of policy are "so innocuous that they are not probative of pretext as a matter of law."  *Legens v. Nationwide Ins. Co.*, No. 2:2002CV00794, 2005 WL 6196421, at *6 (S.D. Ohio 2005).

Beverly's alleged violations of its internal modified duty policy do not raise an inference of pretext.  Beverly's modified duty policy is designed to "meet the needs of the injured employee who is expected to return to pre-injury status."  (Pls.' Mem. Supp. Pls.' Obj. & Resp., Ex. J. at 2-3.)  Beverly's policy contemplated "[m]odified duty assignments . . . for employees with a work related injury or illness that have assigned *temporary* medical restrictions."  (*Id.*) (emphasis added)  Given Ms. Brown's injury history and Dr. Mir's negative report, Beverly's failure to provide Ms. Brown with modified duty counseling is an innocuous omission that does not raise an inference of pretext absent additional evidence of discriminatory intent.

### ii. Open positions

Beverly does not dispute that it advertised for or hired CNAs during the relevant time.  (Defs.' Reply Mem. 5.)  Beverly does argue, however, that the relevant question is whether Ms. Brown was physically capable of working as a CNA.  (*Id.*)  I agree. Since Ms. Brown was not qualified to work as an unrestricted CNA, the fact that Beverly was hiring CNAs both prior to and

after the time that Ms. Brown was terminated does not raise an inference that Beverly's justification for terminating Ms. Brown was pretext.

In sum, "[i]f an employee is disabled on the job and is no longer qualified to perform the duties of his or her job, an employer may terminate that employee when it becomes obvious that the period of disability is not determinable." *Rollins v. Mason County Bd. of Educ.*, 489 S.E.2d 768, 773 (W. Va. 1997) (quoting *Powell*, 403 S.E.2d at 723) (internal quotations omitted).  Ms.  Brown has produced no evidence to suggest that Beverly did anything different.  I **FIND** that Ms. Brown has failed to raise a genuine issue of material fact as to whether Beverly engaged in workers' compensation discrimination or offered a pretextual justification for her termination.

### D. WPCA Claim

Ms. Brown alleges that because she "has not received the fringe benefits . . . which . . . were to have been paid to her within seventy two (72) hours from and after the date of her termination," Beverly violated the WPCA.  (Am. Compl. ¶ 17.)  Specifically, she argues that Beverly violated the WPCA because she "accumulated, and was not paid eighty nine (89) hours of sick leave time, approximately ninety eight (98) hours of vacation time, and five (5) personal days as fringe benefits."  (Pls.' Mem. Supp. Pls. Obj. & Resp. 18.)  The defendants argue that the plaintiff is not entitled to payment under the WPCA because "the Plaintiff had not accrued any paid leave under the terms of the appropriate employment policies and Beverly has a policy of not paying unused accrued paid leave to employees who were discharged."  (Defs.' Mem. Supp. Defs.' Mot. Summ. J. 15.)  Because Ms. Brown concedes that she received payment for her 2005 vacation time, it is apparent that the fringe benefits at stake in this case are those that she allegedly accumulated for the year 2006.  (Defs.' Mot. Summ. J. Ex. A, Tr. Michelle Brown Depo. at 110.)

-18-

### 1. WPCA

Under the WPCA, "[w]henever a person, firm, or corporation discharges an employee, such person, firm or corporation shall pay the employee's wages in full within seventy-two hours." W. Va. Code § 21-5-4(b). The statute defines "wages" to include "accrued fringe benefits capable of calculation and payable directly to the employee."[5] *Id.* § 21-5-1(c). "[W]hether fringe benefits have then accrued, are capable of calculation and payable directly to an employee so as to be included in the term "wages" are determined by the terms of employment and not by the provisions of [the WPCA]." *Meadows v. Wal-Mart Stores, Inc.*, 530 S.E.2d 676, 690 (W. Va. 1999).

An employer that grants fringe benefits pursuant to an employment policy must pay its employees the fringe benefits that have accrued in accordance with that policy as wages. *Robertson v. Opequon Motors, Inc.*, 519 S.E.2d 843, 848, 851 (W. Va. 1999). Fringe benefits only "accrue" within the meaning of the WPCA if they have "vested." *Meadows*, 530 S.E.2d at 688. In order for the benefits to vest, an employee must satisfy all "expressly enumerated conditions or requirements." *Id.* In other words, "the fringe benefits must have vested according to the eligibility requirements of the terms of employment." *Id.* at 690. Moreover,

> [t]erms of employment concerning the payment of unused fringe benefits to employees must be express and specific so that employees understand the amount of unused fringe benefit pay, if any, owed to them upon separation from employment. Accordingly [a court] will construe any ambiguity in the terms of employment in favor of employees.

*Id.*, 530 S.E.2d at 679 (1999) (Syl. Pt. 6).

---

[5]     "Fringe benefits" are defined as "any benefit provided an employee or group of employees by an employer, or which is required by law, and includes regular vacation, graduated vacation, floating vacation, holidays, sick leave, personal leave, production incentive bonuses, sickness and accident benefits and benefits relating to medical and pension coverage." W. Va. Code § 212-5-1(l).

-19-

Nevertheless, when the terms of employment are ambiguous or silent with respect to the payment of fringe benefits, an employer's consistent application of a known policy with respect to such payments may provide a defense to a WPCA suit. For example, in *Gress v. Petersburg Foods, LLC*, 592 S.E.2d 811 (W. Va. 2003), the circuit court had found that the employer's stated vacation policy was "ambiguous about whether and how an employee's vacation time would accrue . . . . [and also] that the employer's vacation policy did not speak to what would happen to any unused vacation time at the conclusion of employment with the appellant." 592 S.E.2d at 815. The circuit court thus granted summary judgment in the employee's favor. The Supreme Court of Appeals subsequently reversed the circuit court's decision because the employer had followed its uncontradicted, unwritten vacation policy in not compensating the discharged employee for "partial weeks of unused vacation." *Id.* at 816; *see also Ingram v. City of Princeton*, 540 S.E.2d 569, 574 (W. Va. 2000) (holding that a city, as an employer, was not required to pay unused sick leave to an employee that resigned despite silence in the employee handbook about such payment because the employee was fully aware of the employer's unwritten policy of not paying such fringe benefits).

### 2. Discussion

Ms. Brown argues that Beverly's Associate Handbook ("the Handbook") provides the terms of employment controlling her receipt of fringe benefits in this case. (Pls.' Mem. Supp. Pls.' Obj. & Resp. 19.) Beverly argues, however, that under the Labor-Management Relations Act, the Collective Bargaining Agreement ("CBA"), rather than the Handbook, controls these payments. (Defs.' Reply Mem. 9.) Ms. Brown contends that she is entitled to payment even under the CBA. (Pls.' Mem. Supp. Pls.' Obj. & Resp. 20.)

The parties have submitted to this court only the portions of the CBA and the Handbook that they deem relevant.  I cannot, however, determine based on the provided sections of the CBA whether it establishes an unambiguous policy for the accrual and payment of fringe benefits upon termination.  For instance, I cannot determine whether Ms. Brown, in light of her extended medical leave, had provided Beverly with "continuous service" at the time of her termination and thus had accrued paid vacation time and personal holidays.  (CBA §§ 24.2, 25.2)  Nor can I determine whether Ms. Brown was a "part time" employee that was ineligible for vacation benefits.  (CBA § 24.14.)  In contrast, the Handbook articulates clear policies for the payment of vacation pay and sick leave pay upon termination.  (Pls.' Mem. Supp. Pls.' Obj. & Resp., Ex. K-1, K-2.)  These sections of the Handbook do not conflict with the CBA.  Furthermore, Ms. Brown knew of the Handbook policies, and rather than providing evidence contradicting those policies, Ms. Brown offers the Handbook as the controlling document for her WPCA claim.  Thus, I find that the Handbook provides known and uncontradicted policies for the payment of fringe benefits.  I further find that Beverly has acted in accordance with its policies by not paying Ms. Brown any vacation pay or sick leave pay upon her termination.  Finally, I find that Ms. Brown has provided no evidence to raise any genuine issues of material fact as to this claim.  I will discuss each disputed fringe benefit in turn.

### a. Vacation Pay

Beverly's Handbook clearly states that "vacation benefits are not accrued and are not paid out upon termination except where specified in this Handbook."  (Pls.' Mem. Supp. Pls.' Obj. & Resp., Ex. K-1.)  The Handbook goes on to state that "[a]n associate who resigns, giving the required notice and works all scheduled days of the notice period . . . will receive awarded unused

-21-

vacation pay for the year the resignation notice was received." (*Id.*)  That is the only circumstance in which the Handbook provides for the payment of vacation benefits.  Ms. Brown did not resign from her position and thus did not satisfy the conditions for having any vacation benefits to which she was entitled paid out upon termination.

Ms. Brown has offered minimal evidence supporting her contention that Beverly owes her vacation pay.  Ms. Brown testified in her affidavit that when she received a paycheck compensating her for her 2005 vacation time, "[t]he attachment to the check showed that for the year 2006 [Ms. Beverly] had earned and was entitled to receive ninety eight (98) hours of vacation pay . . . ." (Pls.' Mem. Supp. Pls.' Obj. & Resp., Ex. A, Michelle Brown Aff. ¶ 21.)  Ms. Brown was not, however, able to locate the attachment and submit it to the court.  (*Id.*)  Even if I give full credence to Ms. Brown's statement, the attachment to the check at best shows that Ms. Brown had earned vacation pay, not that she was entitled to receive it upon her termination.  Therefore, Ms. Brown's statement cannot support a jury verdict in Ms. Brown's favor on this claim.  *See Anderson*, 477 U.S. at 256. I **FIND** that no genuine issue of material fact remains for the issue of Ms. Brown's vacation pay.

### b. Sick Leave Pay

The Handbook states that sick leave salary continuation "is not an accrued benefit, and is not payable upon termination or resignation." (Pls.' Mem. Supp. Pls.' Obj. & Resp., Ex. K-2.)  Thus, Beverly has a policy not to pay sick leave pay regardless of the circumstances of an employee's termination and Ms. Brown is not entitled to payment for any accrued sick leave.

As with her vacation pay claim, Ms. Brown has only offered her testimony regarding her 2005 paycheck to support her contention that she should be paid for her sick leave.  Ms. Brown testified in her affidavit that when she received a paycheck compensating her for her 2005 vacation

time, "[t]he attachment to the check showed that for the year 2006 [Ms. Beverly] had earned and was entitled to receive . . . eighty nine (89) hours of sick leave." (Pls.' Mem. Supp. Pls.' Obj. & Resp., Ex. A, Michelle Brown Aff. ¶ 21.) Again, this testimony only shows that Ms. Brown may have earned eighty-nine hours of sick leave. It does not show that she was entitled to receive payment for those hours in contradiction to the Handbook policy. I **FIND** that no genuine issue of material fact remains for the issue of Ms. Brown's sick leave pay.

### c. Personal Holidays

Ms. Brown asserts that she was entitled to payment for five personal holidays, which is the number of holidays she would have earned under the CBA if she was considered to have provided continuous service to Beverly (CBA § 25.2). She does not, however, present any evidence of a policy requiring Beverly to pay her for those days. The CBA is silent on this issue and Ms. Brown did not provide any portions of the Handbook that are relevant to this issue. Neither does Ms. Brown allege any unwritten policies that might require Beverly to pay her.

In contrast, Beverly has submitted evidence that it has a policy against payment for personal holidays. Ms. Linda Ford, a payroll clerk for Beverly, testified in an affidavit that "Ms. Brown was not paid for any personal holidays because personal holidays are solely to be used during employment, and are not paid upon termination of employment, for any reason. Beverly has no practice of paying personal holidays upon termination of employment." (Defs. Mot. Summ. J. Ex. E, Linda Ford Aff. ¶ 10.) Because Ms. Brown has not provided any evidence to the contrary, I **FIND** that there are no genuine issues of material fact with respect to Ms. Brown's personal holiday pay.

### E. Mr. Brown's Loss Of Consortium Claim

The Complaint also alleges a claim for Steven Brown, who was Ms. Brown's husband at the time of her termination.  Mr. Brown alleges that he suffered lost society, consortium, and income, and also mental anguish, annoyance and inconvenience as a result of Ms. Brown's termination. (Am. Compl. ¶ 22.)  Mr. Brown's claims are derivative of Ms. Brown's wrongful termination claims.  *See Glover v. St. Mary's Hosp. of Huntington, Inc.*, 551 S.E.2d 31, 37 (W. Va. 2001). Because I have ruled against Ms. Brown's claims, I must also rule against Mr. Brown's claim.

## IV. Conclusion

The court **FINDS** that the plaintiffs have raised no genuine issues of material fact for any of their claims and thus summary judgment in favor of the defendants is appropriate.  Accordingly, the court **GRANTS** the defendants' Motion for Summary Judgment [Docket 56].  Further, the defendants' Motion for Summary Judgment as to Damages is **DENIED as moot** [Docket 58].  The court **ORDERS** that judgment be entered in favor of the defendants, and that this case be dismissed and stricken from the docket.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER:        November 12, 2008

Joseph R. Goodwin, Chief Judge

-24-